Argued and submitted April 16, affirmed November 10, 1999

John MITCHELL,
Trustee in bankruptcy for Alexander Stein
and AVS Capital Funds, Ltd.,
*Plaintiffs,*

*v.*

BURT, VETTERLEIN & BUSHNELL, P. C.,
an Oregon professional corporation;
First Interstate Bank of Oregon, N. A.,
a national banking association,
now known as Wells Fargo Bank;
Robert Burt; Eric Vetterlein; and Andrea Bushnell,
*Defendants.*

FIRST INTERSTATE BANK OF OREGON, N. A.,
a national banking association,
now known as Wells Fargo Bank,
*Cross-claim and Counterclaim Plaintiff-Respondent,*

*v.*

BURT, VETTERLEIN & BUSHNELL, P. C.,
an Oregon professional corporation,
*Cross-claim Defendant-Appellant,*

*and*

John MITCHELL,
Trustee in bankruptcy for Alexander Stein
and AVS Capital Funds, Ltd.,
*Counterclaim Defendant.*

BURT, VETTERLEIN & BUSHNELL, P.C.,
an Oregon professional corporation,
*Cross-claim and Counterclaim Plaintiff-Appellant,*

*v.*

FIRST INTERSTATE BANK OF OREGON, N.A.,
a national banking association,
now known as Wells Fargo Bank,
*Cross-claim Defendant-Respondent,*

*and*

John MITCHELL,
Trustee in bankruptcy for Alexander Stein
and AVS Capital Funds, Ltd.,
*Counterclaim-Defendant.*

BURT, VETTERLEIN & BUSHNELL, P. C.,
an Oregon professional corporation;
Robert G. Burt; Eric H. Vetterlein; and Andrea L. Bushnell,
*Third-Party Plaintiffs,*

*v.*

Mark A. GORDON;
George V. Stein; Premium Technology, Inc.,
a North Carolina corporation;
Premium Entertainment Network, Inc.,
a California corporation;
and Premium T.V. International, Inc.,
a California corporation,
*Third-Party Defendants.*

Gregory HEINZ
and Vick & Gutzler,
an Oregon partnership,
*Plaintiffs,*

*v.*

John MITCHELL,
Trustee in bankruptcy for Alexander Stein
and AVS Capital Fund, Ltd.,
an Oregon corporation;
and Burt & Gordon, P. C.,
an Oregon professional corporation;
Burt, Vetterlein & Bushnell, P. C.,
an Oregon professional corporation;
George V. Stein;
and Norman Sepanuk, P. C.,
an Oregon professional corporation,
*Defendants.*

BURT, VETTERLEIN & BUSHNELL, P. C.,
an Oregon professional corporation;
Robert G. Burt; Eric H. Vetterlein; and Andrea L. Bushnell,
*Third-Party Plaintiffs,*

*v.*

Mark A. GORDON;
George V. Stein; Premium Technology, Inc.,
a North Carolina corporation;
Premium Entertainment Network, Inc.,

a California corporation;
and Premium T.V. International, Inc.,
a California corporation,
*Third-Party Defendants.*

Shelton SESSIONS
and Phyllis Shelton,
*Plaintiffs,*

*v.*

John MITCHELL,
Trustee in bankruptcy for Alexander Stein,
aka Alex Stein; and AVS Capital Fund, Ltd.;
and Burt & Gordon, P. C.,
an Oregon professional corporation;
Burt, Vetterlein & Bushnell, P. C.,
an Oregon professional corporation;
George V. Stein;
and Norman Sepanuk, P. C.,
an Oregon professional corporation,
*Defendants.*

Gerald L. VEENKER,
*Plaintiff,*

*v.*

BURT, VETTERLEIN & BUSHNELL, P. C.,
an Oregon professional corporation;
George V. Stein;
and Norman Sepanuk, P. C.,
an Oregon professional corporation,
*Defendants.*

(9012-08205, 9101-00690, 9104-02049 and 9106-04072;
CA A101084)

991 P2d 47

Michael O. Moran argued the cause for appellant Burt, Vetterlein & Bushnell, P. C. With him on the briefs was Black Helterline LLP.

Thomas W. Sondag argued the cause for respondent First Interstate Bank of Oregon. With him on the brief was Lane Powell Spears Lubersky LLP.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

The trial court allowed First Interstate Bank to interplead the proceeds from a stock sale and deposit them with the court. It also entered an order discharging First Interstate from liability as to the funds deposited. The court later held that the discharge order barred one of the claimants from bringing an independent claim for relief against First Interstate and entered judgment for the bank on that claim. We affirm the trial court's judgment on different grounds.

In 1988, Alexander Stein retained Burt, Vetterlein & Bushnell, P.C. (Burt, Vetterlein) to perform legal services. To guarantee payment of his legal bills, Stein pledged 71,500 shares of In Focus Systems, Inc., stock. When Stein became delinquent in paying his legal bills, he signed a confession of judgment in favor of Burt, Vetterlein in the amount of $54,936.23. The trial court later entered a judgment against Stein ordering that Burt, Vetterlein recover $54,936.23 from him. On October 31, 1989, Burt, Vetterlein held a sheriff's sale to sell the In Focus Systems stock that Stein had pledged. At the sheriff's sale, Burt, Vetterlein purchased the stock for $5,000.

Approximately one year later, In Focus Systems, Inc. went public. As part of the initial public offering of the stock, First Interstate Bank of Oregon, N.A., now Wells Fargo Bank, entered into a custody agreement with In Focus Systems' shareholders to act essentially as the escrow agent for the public offering. First Interstate agreed to hold the selling shareholders' certificates, to issue new certificates to the underwriters, and to pay the net proceeds of the public offering to the selling shareholders. The custody agreement does not set out a specific date on which First Interstate would pay the net proceeds to the selling shareholders. Rather, it directs the bank to remit the proceeds "when instructed by the [selling shareholders'] Attorney-in-Fact to do so," an event that the custody agreement contemplated could occur as late as April 15, 1991.

On Friday, December 28, 1990, the public offering closed. First Interstate received net proceeds of $1,262,960

for the 71,500 shares of stock registered in Burt, Vetterlein's name. That same day, Stein filed an action against both Burt, Vetterlein and First Interstate, claiming that he was entitled to the proceeds from the sale of the shares he had owned. He also moved for a temporary restraining order to prevent First Interstate from paying those proceeds to Burt, Vetterlein. The trial court held a hearing on Stein's motion for a temporary restraining order on December 28. The court denied Stein's motion at that time but gave him leave to renew it on Monday, December 31, 1990.[1]

On December 31, 1990, First Interstate received a letter from Stein's attorney stating that if First Interstate paid the proceeds to Burt, Vetterlein, Stein would amend his complaint to allege First Interstate was liable to him for $1,000,000. Burt, Vetterlein also demanded the stock proceeds on December 31, 1990, and notified First Interstate that Burt, Vetterlein would hold First Interstate liable for no less than $500,000 in damages if it did not pay Burt, Vetterlein the proceeds immediately.

On January 4, 1991, First Interstate filed a motion to deposit the proceeds with the court and to be discharged from liability as to the funds deposited. First Interstate also filed a cross-claim against Burt, Vetterlein alleging its right to interplead the stock. In its motion, First Interstate asked that:

"1.    Disputed Funds in the amount of $1,262,690 held by [First Interstate] be deposited with the court;

"2.    All parties to this action be enjoined from commencing or prosecuting any other action against [First Interstate] concerning the funds deposited in the court;

"3.    [First Interstate] be discharged from liability as to the funds deposited[.]"

On February 6, 1991, Burt, Vetterlein filed an answer raising First Interstate's prior independent obligation under the custody agreement as an affirmative defense to First Interstate's

---

[1] There is no evidence in the record why the trial court denied the motion on December 28, although it appears that no demand was made for the proceeds until Monday, December 31. The record does not show that Stein renewed his request for a temporary restraining order on December 31.

cross-claim for interpleader. In its memorandum in support of its affirmative defense, Burt Vetterlein argued that it would be improper to allow First Interstate to interplead the funds because First Interstate had an independent obligation to pay the funds to Burt, Vetterlein pursuant to the custody agreement. Burt, Vetterlein also argued that interpleading the funds would be improper because First Interstate was not exposed to double or multiple liability. Burt, Vetterlein reasoned that it had agreed to indemnify First Interstate, as part of the custody agreement, "against any loss, liability, or expense incurred because of [First Interstate's] obligations under the Custody Agreement." On March 5, 1991, the trial court allowed First Interstate's motion. It entered an order directing First Interstate to deposit the proceeds with the court and discharging First Interstate "from liability to any party as to the funds deposited."

Approximately three months later, on June 3, 1991, Burt, Vetterlein filed a cross-claim against First Interstate alleging that it had breached the custody agreement. The cross-claim alleged that Burt, Vetterlein had demanded that First Interstate pay the proceeds from the sale of its stock but that First Interstate had refused to do so, in violation of the custody agreement. The cross-claim also alleged that Burt, Vetterlein had suffered, among other things, tax losses of approximately $383,000 as a result of First Interstate's failure to pay it the proceeds.

First Interstate filed two motions for partial summary judgment to resolve Burt, Vetterlein's cross-claim. The first motion was not successful; the second one was. In its first motion for summary judgment, First Interstate argued that the order discharging it from liability "as to the funds deposited" discharged it from liability for allegedly breaching the custody agreement. One of the issues the parties litigated as part of the first summary judgment motion was whether Burt, Vetterlein's contract claim was independent from First Interstate's decision to interplead the stock and whether the trial court had intended to resolve that claim as part of the discharge order. Burt, Vetterlein argued that its claim was independent because the custody agreement imposed an obligation on First Interstate to pay it the proceeds on December

31, 1990, three days before First Interstate moved to interplead the stock proceeds. Burt, Vetterlein explained that First Interstate's refusal to do so had caused it to suffer tax losses.[2]

After considering the parties' arguments, the trial court denied First Interstate's first summary judgment motion. It ruled that the "interpleader action satisfied the bank's obligation to pay the principal, but any damages that may have occurred because of the delay after the first of the year, in other words, the claim that Burt, Vetterlein suffered some tax liabilities because of the delay, I don't think that issue is satisfied by the interpleader."

While First Interstate's first motion for summary judgment was pending, Stein filed for bankruptcy. The bankruptcy trustee, as Stein's successor, pursued Stein's claim to the stock proceeds in bankruptcy court. *See In re Stein v. Burt & Gordon, P.C.*, 208 BR 209 (D Or 1997). The bankruptcy court found that the bankruptcy trustee (and not Burt, Vetterlein) was entitled to the stock proceeds. *Id.* at 217-18. In August 1997, the bankruptcy court entered a judgment imposing a constructive trust in favor of the bankruptcy trustee on the In Focus Systems stock proceeds.[3]

Three months later, First Interstate filed a second motion for summary judgment on Burt, Vetterlein's cross-claim. Relying on the doctrine of issue preclusion, First Interstate argued that the bankruptcy court's judgment established that Burt, Vetterlein had no right to the proceeds from the sale and thus no right to sue First Interstate for breach of contract.

The trial court granted the second motion but on a different ground. The court reasoned that when a trial court "enters an order discharging the stakeholder, then, in essence, the fund becomes the party, not the party that deposited the funds. So the claims have to [be] directed

---

[2] Burt, Vetterlein argued that because new tax laws applied to income received in 1991, it would have been entitled to more favorable tax treatment if it received the proceeds from the sale in the 1990 rather than in a later tax year.

[3] Burt, Vetterlein's appeal from the bankruptcy court's ruling is pending in federal court.

against the money as opposed to the [stakeholder]." Although Burt, Vetterlein argued that it had an independent claim against First Interstate for breach of contract, the trial court concluded that if Burt, Vetterlein wanted to raise that issue, then it should have pled its cross-claim before the trial court entered the discharge order. It accordingly granted First Interstate's second summary judgment motion and entered a final judgment in the bank's favor pursuant to ORCP 67 B. Burt, Vetterlein appeals from that judgment.

On appeal, the debate centers on the effect of the March 5, 1991, discharge order.[4] Burt Vetterlein argues that the order released First Interstate from liability as to the funds deposited but not from any independent claim that Burt, Vetterlein may have against the bank. It contends that the trial court's ruling on First Interstate's first motion for summary judgment established that proposition. First Interstate responds that the trial court correctly granted its second summary judgment motion, but it does not urge us to adopt the trial court's reasoning. Rather, First Interstate starts from the proposition that "the 'refusal to pay' [that forms the basis for Burt, Vetterlein's breach of contract claim] occurred when the Bank deposited the proceeds into court." It follows, First Interstate reasons, that "[t]he order allowing the Bank to deposit the proceeds expressly discharged the Bank from liability for doing so." Additionally, First Interstate contends that the purpose of interpleader would be defeated if Burt, Vetterlein could pursue a claim against it for depositing the funds.

---

[4] As noted above, Burt, Vetterlein's appeal from the bankruptcy court's ruling is pending in federal court. Even though Burt, Vetterlein does not dispute that issue preclusion provides a basis for upholding the trial court's ruling here, it argues that we should hold that the trial court based its ruling on the wrong ground. If we agree with its position, Burt, Vetterlein reasons, then it would be free to seek to renew its contract claim against First Interstate if it prevails on appeal in federal court. First Interstate also urges us to decide whether the trial court correctly recognized that the discharge order bars Burt, Vetterlein's claim; if we hold that the discharge order bars Burt, Vetterlein's contract claims, then that claim will be resolved regardless of the outcome in federal court. We agree that the basis of the trial court's ruling has a practical effect on the parties' rights and that it is appropriate for us to reach the question whether the trial court rested its ruling on the correct ground. *Cf. Palmer v. State of Oregon*, 318 Or 352, 355 n 5, 867 P2d 1368 (1994) (even though the Court of Appeals decided the case in the state's favor, the state may still challenge the rationale for that decision in its petition for review).

Before turning to the arguments First Interstate makes, it is perhaps helpful to note the arguments that it has not made. First Interstate has not argued that if the alleged breach occurred before it deposited the proceeds with the court, then it has some other basis for saying that the discharge order released it from liability for that breach. Nor has it argued that it has a defense to Burt, Vetterlein's breach of contract claim independent of the discharge order that may be resolved on summary judgment.[5] Rather, First Interstate's defense of the trial court's ruling begins and ends with the proposition that the act that gave rise to Burt, Vetterlein's damages occurred when First Interstate deposited the proceeds with the court pursuant to the court's order.

Burt, Vetterlein, however, has advanced a different view of its contract claim. It explained in opposition to First Interstate's first summary judgment motion that the breach was complete and that its damages accrued when First Interstate refused to pay the proceeds on December 31, 1990, three days before the bank moved to interplead the stock proceeds. Under Burt, Vetterlein's theory, even if the bank had paid Burt, Vetterlein all the proceeds of the stock sale on January 3, 1991, rather than moved to interplead them, Burt, Vetterlein still would have a breach of contract claim against First Interstate for failing to pay it the proceeds three days earlier on December 31, 1990. Burt, Vetterlein concludes that even if the order allowing First Interstate to deposit the proceeds expressly discharged it from liability for doing so, the order does not discharge it from liability for a breach that occurred before it deposited those proceeds.

■ As the parties frame the issue on appeal, it reduces to the question whether we can say, as a matter of law on summary judgment, that First Interstate's view of Burt, Vetterlein's contract claim is correct. We cannot. There was evidence that both Stein and Burt, Vetterlein understood that the net proceeds would be paid to the selling shareholders on December 31, 1990, which would permit a reasonable juror to infer that the attorney-in-fact had instructed First Interstate to pay out the funds on that date. Put another way,

---

[5] We do not mean to imply that no other defense exists, only that the parties have not asked us to decide whether it does.

the evidence in this record would not require a juror to conclude that the breach that gave rise to Burt, Vetterlein's damages did not occur until First Interstate deposited the proceeds with the court. Rather, a juror reasonably could conclude that the act that allegedly gave rise to Burt, Vetterlein's damages occurred before First Interstate moved to interplead the funds. *See Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).[6]

First Interstate advances a second argument. It says that the purpose of interpleader would be defeated if Burt, Vetterlein could pursue a claim against it for interpleading the funds. As an initial matter, the bank's second argument appears to be a variation on its first argument. It assumes that Burt, Vetterlein's breach of contract claim is based on the fact that the bank moved to interplead the funds on January 3, 1991. As explained above, the law firm's breach of contract claim is based on a separate act that occurred earlier.

■ Beyond that, First Interstate's argument appears to misperceive the purpose of ORCP 31. Historically, interpleader was not available if the stakeholder was independently liable to the claimant—*i.e.*, if a claimant could "asser[t] a right by contract, estoppel or other such relationship which [would] entitl[e] him to relief against the stakeholder independently of any questions of title to the stake." James W. Moore, Jo Desha Lucas, & George J. Groether, Jr., 3A *Moore's Federal Practice* ¶ 22.11, at 22-107 (2d ed 1994);[7] *accord Pope v. Ames et al.*, 20 Or 199, 201, 25 P 393 (1890) (same). ORCP 31 A was intended to abrogate that historical limitation. *See* Council on Court Procedures, Staff Comment to ORCP 31 A (1978).[8] It permits interpleader even though a

---

[6] The parties have not asked us to decide whether Or Laws 1999, ch 815, either applies to this case or changes the analysis. We note that even if the changes to ORCP 47 C that the legislature adopted apply, our conclusion would remain the same.

[7] We cite the second rather than the third edition of Moore's treatise because it contains a more extensive discussion of this issue.

[8] ORCP 31 A tracks FRCP 22 verbatim, which was intended to abrogate the historical limitation against interpleader if the stakeholder was independently liable to one of the claimants. *See* 3A *Moore's Federal Practice* ¶ 22.11. Although the fact that state law mirrors federal law does not necessarily establish that our legislature intended to incorporate the federal understanding, *see Benton County v.*

claimant asserts both title to the stake and an independent claim for relief against the stakeholder. Accordingly, an action for interpleader may require a court to determine both whether the stakeholder has any liability for the stake and whether the stakeholder is also independently liable to the claimant under some other theory, such as breach of contract.

■ ■      Because interpleader under ORCP 31 is broad enough to encompass both types of claims, a discharge order may discharge the stakeholder from liability with respect to the stake without also discharging the stakeholder from liability from an independent claim for relief. Such a limited discharge order is not inconsistent with the purposes of interpleader. As Moore explains, "[t]he mere fact that a claimant's right against the stakeholder may ultimately be sustained on a ground other than the title claim contested by the other claimants does not eliminate the need to protect the stakeholder against these divergent title claims." 3A *Moore's Federal Practice* ¶ 22.11, at 22-108. Indeed, even if a court has the authority to discharge independent claims for relief as part of the discharge order, *see New York Life Ins. Co. v. Connecticut Dev. Auth.*, 700 F2d 91, 96 (2d Cir 1983) (so holding), it cannot do so without first providing some process, such as a trial or summary judgment, for resolving those independent claims.[9] *See* 3A *Moore's Federal Practice* ¶ 22.14[3]; *Royal School Laboratories, Inc. v. Town of Watertown*, 358 F2d 813, 816 (2d Cir 1966); *Dick v. First National Bank of Birmingham*, 334 So 2d 922, 927 (Ala Civ App 1976). First Interstate's invocation of the purpose of interpleader fails to account for the more complex set of claims that ORCP 31 permits to be litigated as part of an interpleader action.

The trial court based its ruling on a different rationale. It viewed a stakeholder's motion to be discharged from liability as a procedural device to force claimants to assert

---

*Friends of Benton County*, 294 Or 79, 87, 653 P2d 1249 (1982), the commentary to ORCP 31 A removes any doubt about the legislature's intent. It states that ORCP 31 "eliminates the equitable interpleader requirements * * * that the stakeholder not have incurred any independent liability to any one of the claimants." Council on Court Procedures, Staff Comment to ORCP 31 A (1978).

[9] Moore's treatise provides a thoughtful discussion on how and at what stage of an interpleader action independent claims for liability against the stakeholder should be adjudicated. *See* 3A *Moore's Federal Practice* ¶¶ 22.14[3] & [4].

any independent claim for liability in response to the motion or be barred from doing so later. Because Burt, Vetterlein did not add its cross-claim until after the trial court ordered First Interstate discharged from liability, the court concluded that Burt, Vetterlein was procedurally barred from raising that claim. Whether a motion for discharge has the effect the trial court perceived depends, as an initial matter, on what the motion says. To take an obvious example, if the stakeholder expressly asked the trial court to discharge it from liability as to the stake but not as to any independent claim, then that motion would place no obligation on a claimant to come forward and assert any independent claim for relief it might have against the stakeholder.

■       It is far from clear that the motion in this case differed in any significant respect from the example noted above. Even if, however, the motion were sufficient to require Burt, Vetterlein to put the court on notice that it had an independent claim for relief against First Interstate, Burt, Vetterlein did so. Burt, Vetterlein opposed First Interstate's discharge motion on the ground that First Interstate should not be released from liability for breaching its contractual duty to pay Burt, Vetterlein the proceeds on December 31, 1990. The trial court ruled, in response to First Interstate's first motion for summary judgment, that its order was limited to discharging First Interstate from liability as to the fund but not as to Burt, Vetterlein's breach of contract claim. As our earlier discussion of the scope of the discharge order makes clear, we agree with the trial court's initial ruling.

■       Neither the argument advanced by First Interstate on appeal nor the trial court's rationale provides a basis for granting summary judgment on Burt, Vetterlein's cross-claim. First Interstate, however, also argued below that issue preclusion barred Burt, Vetterlein from pursuing its breach of contract claim against First Interstate. It explained that if, as the bankruptcy court found, Stein rather than Burt, Vetterlein owned the stock, then Burt, Vetterlein has no basis for its contract action against First Interstate. On appeal, Burt, Vetterlein does not dispute that issue preclusion provides an alternative basis for affirming the trial court's ruling. *See* n 4 above.

■ Issue preclusion applies in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding. *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103, 862 P2d 1293 (1993). In this case, the federal bankruptcy court found that Burt, Vetterlein is not entitled to the In Focus Systems stock proceeds and ordered that the funds be awarded to Stein's successor. *In re Stein*, 208 BR at 217-18. A final judgment to that effect was entered on August 7, 1997. Even though that ruling is on appeal, the requirements for issue preclusion are satisfied by the judgment entered by the federal bankruptcy court. *See Ron Tonkin Gran Turismo v. Wakehouse Motors*, 46 Or App 199, 207, 611 P2d 658, *rev den* 289 Or 373 (1980). Because the trial court reached the right result, albeit for the wrong reason, we affirm its judgment.

Affirmed.