Argued and submitted June 5, affirmed August 14, 2002

Marchine Willa NEWTON,
*Appellant,*

*v.*

BANK OF THE WEST,
a California chartered bank,
*Respondent.*

In the Matter of the Estate of
George T. Adams.

BANK OF THE WEST,
a California chartered bank,
*Third-Party Plaintiff,*

*v.*

Judith Diane WOITTE,
Michael L. Adams,
and Judith Diane Woitte,
personal representative of the Estate of
George T. Adams,
*Third-Party Defendants.*

CCV 9906669; A110139

51 P3d 1281

Terrance J. Slominski argued the cause and filed the briefs for appellant.

Christopher T. Carson argued the cause for respondent. With him on the brief were James P. Laurick, Gregory B. Snook, and Kilmer, Voorhees & Laurick, P.C.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Plaintiff, the sole surviving owner of a joint account at Bank of the West, sued the bank for conversion and breach of contract after it refused to let her withdraw the account's funds. The bank counterclaimed for interpleader of the funds and joined as third-party defendants the children of the deceased co-owner of the account, who also claimed entitlement to the funds. The trial court granted summary judgment in favor of the bank, allowing it to interplead the funds, dismissing all claims against it, and awarding it costs and attorney fees. Plaintiff appeals, and we affirm.

The material facts are undisputed. Adams owned two certificates of deposit (CDs) with the bank worth $142,000 at maturity. These CDs were in Adams's name with his children as beneficiaries. On April 16, 1999, four days before the CDs' maturity date, plaintiff, who for several years had been Adams's live-in caretaker, and Adams, 82 and in ill health, visited the bank's branch where Adams did his banking. Plaintiff first attempted to arrange for the $142,000 CD proceeds to be deposited on maturity into an account that would be solely in her name. Bank personnel asked Adams if he wanted his name on the account as joint owner, and he assented. The bank then set up a joint money market account and on maturity deposited the CD proceeds into it according to instructions. A few weeks later, Adams and plaintiff opened a joint checking account into which $2,500 from the money market account was deposited.

On May 19, Adams's children went to the bank with a copy of a general power of attorney dated March 1998 and signed by Adams. One provision of that document stated that his daughter could

> "[w]ithdraw any monies deposited with my bank, mutual savings bank or savings and loan association in my name or in the name of myself and any other person or persons and generally * * * do any business with any such financial institution on my behalf."

Pursuant to that provision, Adams's children requested that all the money be withdrawn from Adams's and plaintiff's joint account and transferred to two new accounts that would

be jointly owned by Adams and them. Instead, because of the dispute over ownership of the funds, the bank immediately froze the account, under a policy stated in the account agreement:

> "**CONFLICTING DEMANDS.** If conflicting demands are made by multiple owners, the Bank may freeze the funds in your account until the conflicts are resolved."

Later that same day, Adams died. The bank learned this fact from plaintiff, who, within 10 minutes of Adams's death, telephoned the bank seeking account information and requesting withdrawal of the funds. The bank informed her it had frozen the funds and refused the request, giving rise to this action.

■ Review is confined to the record on summary judgment. If, based on the record before the trial court viewed in the manner most favorable to plaintiff, no reasonable finder of fact could return a verdict for plaintiff on the subject matter of the motion, there is no issue of material fact and summary judgment is appropriate. ORCP 47 C. Because there are no disputed material facts, we review for errors of law. *Schultz v. Bank of the West*, 135 Or App 359, 362, 897 P2d 1204 (1995), *rev'd on other grounds* 325 Or 81, 934 P2d 421 (1997).

■ Plaintiff's and Adams's joint account agreement with the bank declares that the account "is governed by Federal and State Laws and the Bank's present and future rules and practices." Plaintiff maintains that the dispositive governing provision is ORS 708A.470(1), which provides, in part:

> "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent, unless there is clear and convincing evidence of a different intention in the bank's account records at the time of death."

The bank, for its part, argues that this provision by its terms does not require the bank to dispense funds to the surviving owner of a joint account and that the provision must be read in conjunction with others, including in particular ORS 708A.435(3), which provides:

"An Oregon operating institution may, at its option, interplead a deposit that is subject to an adverse claim."

We find the bank's argument to be the more persuasive.

■■ Plaintiff reads too much into ORS 708A.470(1). At most, it establishes that the funds in the joint accounts belong to her. That does not mean that she has an immediate right to their possession. "We have held that [the surviving co-owner statute] means precisely what it says." *Blessing v. Nicholas*, 110 Or App 28, 30, 820 P2d 1376 (1991). Further, statutes dealing with the same subject matter must be read together and harmonized to the extent possible. *Davis v. Wasco IED*, 286 Or 261, 272, 593 P2d 1152 (1979). Giving ORS 708A.470(1) the meaning that plaintiff urges would create a conflict with a related statute, ORS 708A.435(3), which, as noted above, permits "[a]n Oregon operating institution * * * at its option, [to] interplead a deposit that is subject to an adverse claim." Plaintiff's interpretation of ORS 708A.470(1) would declare that a bank must not do what ORS 708A.435(3) clearly says it may do.

■ We prefer a reading that is faithful to the literal language of both provisions and that does not create a conflict. ORS 708A.470(1) simply states that a surviving co-owner obtains an ownership interest in the contents of a joint account unless there is "clear and convincing evidence of a different intention in the bank's account records at the time of death."[1] ORS 708A.435(3) allows the bank to avoid relinquishing the contents of that account if it is subject to an adverse claim—from the estate, from a judgment creditor, or from anybody else. The statute does not require an institution to attempt to distinguish meritorious from nonmeritorious claims. Rather, in such a situation, the bank can avail itself of interpleader. Indeed, such a situation is precisely what interpleader is designed to address. The bank did not violate ORS 708A.470(1) by refusing to release to plaintiff the frozen funds.

---

[1] Although evidence existed at the time of Adams's death that his daughter, with her power of attorney, had expressed Adams's intention to close the account and divest plaintiff of its contents, the bank does not argue that the evidence was clear and convincing.

■     Plaintiff further argues that, even given the above analysis, the bank should not have interpleaded the funds because Adams's children failed to meet the requirements of ORS 708.435(1):

> "An Oregon operating institution shall be obligated to recognize an adverse claim to a deposit it holds only if the adverse claimant gives notice to the Oregon operating institution of its claim and:
>
> "(a)   Procures a restraining order, injunction or other appropriate process against the Oregon operating institution in an action wherein the person to whose credit the deposit stands is made a party and served with summons; or
>
> "(b)   Delivers to the Oregon operating institution in a form, and with sureties acceptable to the Oregon operating institution, a bond or an irrevocable letter of credit issued by an insured institution, as defined in ORS 706.008, indemnifying the Oregon operating institution from any liability, damage and expenses on account of the payment of the adverse claim or the dishonor of the check or other order of the person to whose credit the deposit stands."

Although that section of the statute does state the circumstances under which an Oregon operating institution *shall be obligated* to recognize an adverse claim to a deposit that it holds, it does not state or even imply that these are the only circumstances under which an Oregon operating institution *may, at its option*, recognize such a claim. By the clear language of ORS 708A.435(3), the bank has the option to interplead the funds of an account even when it is not required to, so long as there is an "adverse claim" to them. At the time the bank froze Adams's and plaintiff's joint account, two claimants made adverse claims to the funds in it.

■     Plaintiff finally argues that, even if the bank properly employed the interpleader statute, the court nonetheless erred in granting the bank summary judgment because the bank's claim of interpleader was not a complete defense to plaintiff's claims for breach of contract or conversion. Plaintiff bases this argument on *Mitchell v. Burt, Vetterlein and Bushnell, P.C.*, 164 Or App 154, 991 P2d 47 (1999). Her argument is not well taken. In *Mitchell*, we held that, even if a

court in interpleader discharges a stakeholder from liability for a stake, that action does not necessarily discharge the stakeholder from liability for an independent claim for relief. *Mitchell,* 164 Or App at 166. However, in *Mitchell,* the stakeholder was alleged to have been contractually obligated under an escrow agreement to deliver funds to one of the claimants on a specific date. The claimants alleged that the stakeholder bank's failure to deliver the funds on that date, before filing an interpleader three days later, caused the claimant damages separate from the claim to the stake itself in the form of higher tax liability.

Here, although plaintiff's claims for breach of contract and conversion appear to be independent of the interpleader issue, she pleads no consequential or separate damages. Her only claim is for the stake itself, and that was held by the bank in an interest bearing account pursuant to court order while the matter was litigated. The damages are in the precise amount of the deposit plus interest.

Because the interpleader was proper and there are no outstanding independent claims against the bank, we conclude that the trial court correctly dismissed the bank from the proceeding and did not err in granting the bank's motion for summary judgment.

Affirmed.